1

2

3

4

5

6

7

8          # UNITED STATES DISTRICT COURT

9                  EASTERN DISTRICT OF CALIFORNIA

10

11   KYLE KOLB,                          Case No. 1:17-cv-00957-DAD-SAB

12              Plaintiff,               FINDINGS AND RECOMMENDATIONS
                                         RECOMMENDING GRANTING IN PART
13       v.                              PLAINTIFF'S MOTION FOR DEFAULT
                                         JUDGMENT
14   DAVID TELLING, et al.,
                                         (ECF Nos. 12, 19)
15              Defendants.
                                         OBJECTIONS DUE WITHIN FOURTEEN
16                                       DAYS

17

18        Currently before the Court is Plaintiff Kyle Kolb's motion for default judgment against

19   Defendants David Telling ("Defendant Telling") and Wakecraft Boats II, Inc. ("Defendant

20   Wakecraft"). The matter has been referred to the undersigned pursuant to 28 U.S.C. §

21   636(b)(1)(B) and Local Rule 302. Having considered the moving papers, the declarations

22   attached thereto, the April 5, 2018 hearing, Plaintiff's supplemental briefing, the declarations and

23   exhibits attached thereto, as well as the Court's file, the Court issues the following findings and

24   recommendations.

25                                    I.

26                              BACKGROUND

27        On or about February 27, 2015, Plaintiff entered into a sales agreement with Defendant

28   Wakecraft for the manufacture and purchase of a 2015 ZR8 Boat ("the boat"). The boat was to

                                         1

be delivered by June 13, 2015. Upon executing the sales agreement, Plaintiff wired $85,000.00 to Defendant Wakecraft. However, Defendant Wakecraft did not manufacture and deliver the boat according to the sales agreement. Defendant Telling assured that the boat would be ready and delivered by July 3, 2015, but Defendants failed to deliver the boat by the July 3, 2015 delivery date. Defendant Telling provided multiple dates upon which the boat would be completed and delivered to Plaintiff.

On or about October 15, 2015, Plaintiff had a conversation with Defendant Telling. Defendant Telling told Plaintiff that he was having financial difficulties that prevented him from completing the boat by the agreed upon dates, but he guaranteed that the boat would be completed and delivered by March 15, 2016. Plaintiff and Defendants entered into an agreement entitled "Boat Delivery Agreement," which provided that it superseded all prior written or oral agreements between the parties. The Boat Delivery Agreement provided that the boat would be completed and delivered by March 15, 2016, or that the $85,000 that Plaintiff paid Defendant would be returned by March 15, 2016.

However, Defendants did not manufacture and deliver the boat by March 15, 2016, and have failed and/or refused to return Plaintiff's $85,000.00. Defendant Telling told Plaintiff that the boat was almost complete, but that he needed an additional $25,415.00 to upgrade the boat to a 2017 ZR8. Defendant Telling requested that Plaintiff loan $25,415 to Defendants. Thereafter, Plaintiff and Defendants entered into an agreement entitled "Amendment to Boat Agreement" (the "Amendment"), which provides that Defendants would upgrade the boat to a 2017 ZR8 that would be completed by July 15, 2016, and that Plaintiff would loan $25,415 to Defendants which would be repaid with monthly payments of $2,000 that would begin 30 days after Plaintiff loaned the funds to Defendants.

On July 18, 2017, Plaintiff filed the complaint. (ECF No. 1.) Plaintiff brought claims for breach of contract, unjust enrichment, and breach of the covenant of good faith and fair dealing against Defendants and a claim for intentional misrepresentation against Defendant Telling.

The defendants were served with the complaint and summonses on August 29, 2017, and September 6, 2017. (ECF Nos. 7, 8.) On December 13, 2017, Plaintiff requested that the Clerk

of Court enter default against Defendants because they had not filed a responsive pleading. (ECF No. 9.)[1]  On December 15, 2017, the Clerk of Court entered default against Defendants. (ECF No. 10.)

On February 23, 2018, Plaintiff filed a motion for default judgment against Defendants. (ECF No. 12.)  The motion was served on Defendants.

On April 5, 2018, Magistrate Judge Michael J. Seng held a hearing on the motion. Edward Stepans appeared telephonically on behalf of Plaintiff.  Defendants did not appear. Plaintiff was ordered to file supplemental briefing and competent evidence to explain and justify the judgment requested.  On April 19, 2018, this action was reassigned to the undersigned due to the retirement of Magistrate Judge Seng.  (ECF No. 18.)  Plaintiff filed his supplemental briefing on April 26, 2018.  (ECF No. 19.)

## II.

## LEGAL STANDARD

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, unless a claim is for a sum certain or a sum that can be made certain by computation, a party must apply to the court for a default judgment.  Fed. R. Civ. P. 55(b).  Upon entry of default, the complaint's factual allegations regarding liability are taken as true.  Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977); Garamendi v. Henin, 683 F.3d 1069, 1080 (9th Cir. 2012).  However, the complaint's factual allegations relating to the amount of damages are not taken as true. Geddes, 559 F.2d at 560.  Accordingly, the amount of damages must be proven at an evidentiary hearing or through other means.  Microsoft Corp. v. Nop, 549 F.Supp.2d 1233, 1236 (E.D. Cal. 2008).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of North America, 980 F.2d 1261, 1267 (9th Cir. 1992).  Pursuant to Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

---

[1] Although the parties never filed a stipulation, Plaintiff's counsel corresponded with counsel for Defendants regarding an extension of time to file an answer to the complaint.  See ECF No. 9.  Plaintiff granted Defendants' request for an extension of time to file an answer to Plaintiff's complaint to October 2, 2017.  Id.  However, Defendants did not file their responsive pleading.

Entry of default judgment is not a matter of right and it is within the discretion of the court whether default judgment should be entered. Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001); Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). The Ninth Circuit has set forth the following factors for the court to consider in exercising its discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72.

## III.

## DISCUSSION

In the motion for default judgment and supplement, Plaintiff seeks default judgment and requests monetary damages, prejudgment interest, post-judgment interest, attorneys' fees, and costs.[2]

### A. Jurisdiction

1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. U.S v. Sumner, 226 F.3d 1005, 1009 (9th Cir. 2000). Here, Plaintiff alleges that diversity jurisdiction exists. District courts have original jurisdiction of all civil actions between citizens of different States in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). This requires complete diversity of citizenship and the presence "of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the entire action." Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 679 (9th Cir. 2006) (citations omitted).

Here, Plaintiff is a citizen of Colorado. (Compl. at ¶ 1.) Defendant Telling is a citizen of

---

[2] Plaintiff did not originally seek attorney fees in the motion for default judgment, but is now seeking attorney fees in the supplement.

California.  (Id. at ¶ 2.)  Defendant Wakecraft is a California Corporation with its principal place of business in California.  (Id. at ¶ 2.)  A corporation is deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.  Lincoln Prop. Co. v. Roche, 546 U.S. 81, 94 (2005) (quoting 28 U.S.C. § 1332(c)(1)).  Therefore, Defendant Wakecraft is a citizen of California.  Since Plaintiff is not a citizen of the same state as Defendants, complete diversity of citizenship exists.

Plaintiff alleges that the amount in controversy exceeds $75,000.00.  (Compl. at ¶ 4.)  Plaintiff contends that Defendants breached a contract by failing to deliver the 2017 boat, failing to return the $85,000.00 paid for the boat, and failing to repay the $25,415.00 loan.  (Id. at ¶ 36.)  Plaintiff seeks damages of at least $75,000.  The Court finds that Plaintiff has sufficiently alleged that the amount in controversy meets the jurisdictional requirement.  Therefore, the Court has original jurisdiction under 28 U.S.C. § 1332(a).

    2.   Service of Process

**a.**    **Service on Defendant Telling**

Rule 4 of the Federal Rules of Civil Procedure sets forth the requirements for the manner of service on an individual.  Rule 4(e) provides that an individual may be served by personally delivering a copy of the summons and a complaint.  Fed. R. Civ. P. 4(e)(2).

Here, Defendant Telling was personally served with the summons, the cover sheet, and new case documents.  (ECF No. 8.)  However, the proof of service does not indicate that the complaint was served.  Rule 4 is flexible and should be liberally construed so long as it gives the party to be served sufficient notice of the complaint.  Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 688 (9th Cir. 1988).  While the proof of service does not indicate that Defendant Telling was served with the complaint, his counsel, Cyril Lawrence, corresponded with Plaintiff's counsel regarding an extension of time to file an answer which indicates that the complaint was served.  (February 23, 2018 Declaration of Robert J. Berens ("Berens Decl.") at ¶ 8.)  Therefore, the Court finds that Defendant Telling was served sufficiently.

///

**b.      Service on Defendant Wakecraft**

The Federal Rules of Civil Procedure provide for two ways to effectuate service on a corporation. Pursuant to Federal Rule of Civil Procedure 4(h), a corporation must be served "in a manner prescribed by Rule 4(e)(1) for serving an individual; or . . . by delivering a copy of the summons and of the complaint to an officer, a managing or general agent or any agent, authorized by appointment or by law to receive service of process. . . ."

Here, Defendant Wakecraft was served by personal service on Cyril Lawrence, the person authorized to receive service of process for Defendant Wakecraft. (ECF No. 7 at 1, Berens Decl. at ¶ 6.) The proof of service indicates that Defendant Wakecraft was personally served with the summons, the cover sheet, and new case documents. While the proof of service does not indicate that Defendant Wakecraft was served with the complaint, the fact that its counsel, Mr. Lawrence, contacted Plaintiff's counsel regarding an extension of time to file an answer indicates that it was served with the complaint. Therefore, the Court finds that Defendant Wakecraft was sufficiently served.

**B.      The Eitel Factors Weigh in Favor of Default Judgment**

As discussed below, consideration of the Eitel factors weigh in favor of granting default judgment in this instance against Defendants.

**1.      Possibility of Prejudice to Plaintiff**

The first factor weighs in favor of entry of default judgment. If default judgment is not entered, Plaintiff is effectively denied a remedy for the violations alleged in this action unless Defendants appear. Defendants may never appear to defend this action. Therefore, this factor weighs heavily in favor of granting default judgment.

**2.      The Merits of Plaintiff's Substantive Claims and Sufficiency of Complaint**

The next relevant Eitel factors include an evaluation of the merits of the substantive claims alleged in the complaint as well as the sufficiency of the complaint itself. This requires the Court to look to the complaint to determine if the allegations contained within are sufficient to state a claim for the relief sought. Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978). "[F]acts which are not established by the pleadings of the prevailing party, or claims which are

not well-pleaded, are not binding and cannot support the judgment." <u>Alan Neuman Prods., Inc.</u> <u>v. Albright</u>, 862 F.2d 1388, 1392 (9th Cir. 1988) (finding it error to award default judgment where the complaint was insufficient to state a claim).

In Plaintiff's motion for default judgment, he states that counts one through four allege that Defendants breached the Agreement by not timely delivering the 2017 boat and not repaying the loan that Plaintiff made to Defendants. Plaintiff also states that he has demonstrated the merits of his substantive claim against Defendants.

Plaintiff brings a claim for breach of contract under California law. The elements of a cause of action for breach of contract are: (i) existence of the contract, (ii) plaintiff's performance or excuse for nonperformance, (iii) defendant's breach, and (iv) resulting damages to the plaintiff. <u>See</u> <u>CDF Firefighters v. Maldonado</u>, 158 Cal.App.4th 1226, 1239 (2008) (citation omitted).

The Court first determines whether a valid contract existed. Plaintiff's complaint alleges that he and Defendants entered into a Boat Delivery Agreement on October 15, 2015, and an Amendment on or about June 20, 2016. Plaintiff alleges that the Boat Delivery Agreement, as amended by the Amendment, was a valid contract. Plaintiff attaches the Purchase Agreement, Boat Delivery Agreement, and Amendment to the complaint. Plaintiff alleges that Defendants have breached the terms of the Boat Delivery Agreement, which was amended by the Amendment.

The Boat Delivery Agreement was signed by both parties and provided that Plaintiff was willing to hold off on bringing a civil complaint against Defendants pursuant to the Boat Delivery Agreement and Defendants would manufacture the boat and deliver the boat to Plaintiff's home address or return the $85,000.00 to Plaintiff on or before March 15, 2016. Therefore, the Boat Delivery Agreement is a valid contract.

Plaintiff contends that the Amendment was a valid amendment to the original Boat Delivery Agreement. However, Section 3d of the Boat Delivery Agreement states that "[t]his Agreement may only be modified or amended if the amendment is made in writing and is signed by both parties." (ECF No. 1-2.) A review of the Amendment reveals that it was not signed by

1  Plaintiff.  (ECF No. 1-4.)

2      Here, the express language of the Boat Delivery Agreement makes it clear that it can only

3  be amended if the amendment is made in writing and is signed by both parties.  Plaintiff does not

4  present any argument or evidence that this was not what was intended by the parties or that this

5  should be interpreted differently.  When a court is determining the meaning of a written contract,

6  the court first decides whether the language is ambiguous and reasonably susceptible to the

7  interpretation urged.  See Winet v. Price, 4 Cal.App.4th 1159, 1165 (1992).  As Plaintiff does not

8  urge any other interpretation and the language appears clear, the language is not ambiguous.

9      Plaintiff also does not present any argument or theory in the complaint, the motion for

10  default judgment, or the supplement as to how or why the Amendment is a valid amendment to

11  the Boat Delivery Agreement even though Plaintiff did not sign it.  Therefore, the Court finds

12  that the Amendment is not a valid amendment to the original contract, the Boat Delivery

13  Agreement.[3]  The Court addresses the remaining elements of the breach of contract claim for

14  only the Boat Delivery Agreement.

15      The Court next determines whether Plaintiff performed his obligations or was excused

16  from performance.  There is no indication that Plaintiff filed a civil complaint prior to the March

17  15, 2016 date that Defendants were to deliver the boat or return the $85,000.00 to Plaintiff.

18  Therefore, Plaintiff establishes that he performed his obligations under the contract.

19      Further, Plaintiff establishes that Defendants have breached the contract by failing to

20  provide the boat or repay the $85,000.00 on or before March 15, 2016.  Finally, Plaintiff alleges

21  that he has been damaged by Defendants as they did not deliver the boat or return the $85,000.00

22  he paid for the boat.  He also seeks liquidated damages pursuant to the Boat Delivery Agreement

23  as well as attorney fees, costs, and prejudgment interest.  Thus, Plaintiff has established the

24  elements for breach of contract by Defendants based on the Boat Delivery Agreement and the

25  complaint sufficiently states a claim for breach of contract based on the Boat Delivery

26  Agreement.  The Court next addresses whether Plaintiff has stated a claim for unjust enrichment,

27

28  ---
[3] The Amendment issue is addressed below in a discussion of Plaintiff's second claim for relief.

his second cause of action.

While the second claim in the complaint is for unjust enrichment, several decisions by the California Court of Appeals have held that unjust enrichment is not a cause of action, but a request for restitution. See, e.g., Hill v. Roll Int'l Corp., 195 Cal.App.4th 1295, 1307 (2011) (citing McKell v. Washington Mutual, Inc., 142 Cal.App.4th 1457, 1490 (2006); Melchior v. New Line Prods., Inc., 106 Cal.App.4th 779, 793 (2003)). Based on these cases, many district courts have concluded that there is no independent cause of action for unjust enrichment under California law. Low v. LinkedIn Corp., 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (collecting cases). Recently, however, the Ninth Circuit held that under California law, unjust enrichment and restitution describe the theory underlying a claim that a defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request. Astiana v. Hain Celestial Grp., Inc., 783 F.3d 753, 762 (9th Cir. 2015). In a quasi-contract cause of action, a party typically seeks the return of the benefit. Id. Thus, when a plaintiff alleges unjust enrichment, it may be construed as a quasi-contract claim seeking restitution. Id.

Restitution may be sought in connection with a "quasi-contractual" claim in order to avoid unjustly conferring a benefit upon a defendant where there is no valid contract. McBride v. Boughton, 123 Cal.App.4th 379, 388 (2004). "In such cases, where appropriate, the law will imply a contract (or rather, a quasi-contract), without regard to the parties' intent, in order to avoid unjust enrichment. Id. (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, §§ 91, 95–96, 99–110, 116, pp. 122–123, 125–126, 128–136, 140–141; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 160, pp. 229–230; see also 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 517, pp. 607–608).

Although Plaintiff titles the second claim unjust enrichment, he is asking for restitution based on the Boat Delivery Agreement, as amended by the Amendment, and therefore, he is pursuing a quasi-contract claim in the second claim. As discussed above, the Boat Delivery Agreement is a valid, enforceable contract, and therefore, there can be no quasi-contract claim based on the Boat Delivery Agreement. However, Plaintiff has not shown that the Amendment is a valid amendment to the Boat Delivery Agreement, and therefore, the loan as part of the

1     Amendment may form the basis of a quasi-contract claim.

2          After the deadline for delivering the boat or repaying the money passed, Defendant

3 Telling told Plaintiff that the boat was almost completed and stated that he needed an additional

4 $25,415.00 to upgrade the boat to the 2017 Model Year. Defendant Telling requested that

5 Plaintiff loan $25,415.00 so he could buy the parts necessary to make the boat a 2017 Model

6 Year. Plaintiff paid Defendants an additional $25,415.00 as a loan. Plaintiff alleges that he has

7 not been repaid the $25,415.00 loan that he made. It would be unjust for Defendants to retain the

8 $25,415.00 that Plaintiff gave as a loan to Defendants. Therefore, Plaintiff has sufficiently stated

9 a claim based on a quasi-contract theory for restitution. [4]

10          Accordingly, these factors weight in favor of grating default judgment.

11        3.    <u>The Sum of Money at Stake in the Action</u>

12          The sum of money at stake in this action weighs in favor of default judgment. Default

13 judgment is disfavored where large amounts of money are involved or the award would be

14 unreasonable in light of the defendant's actions. <u>G & G Closed Circuit Events, LLC v. Nguyen</u>,

15 No. 3:11-cv-06340-JW, 2012 WL 2339699, at *2 (N.D. Cal. May 30, 2012). Plaintiff seeks

16 $166,965.89 as of April 26, 2018, with liquidated damages and prejudgment interest accruing at

17 the rate of $55.87 daily thereafter until judgment is entered. As Plaintiff paid Defendants

18 $110,415.00 ($85,000.00 + $25,415.00), the amount of money sought in the default judgment

19 motion is not unreasonable. Therefore, the Court finds that this factor weighs in favor of default

20 judgment.

21        4.    <u>The Possibility of a Dispute Concerning Material Facts</u>

22          In this action, Plaintiff has filed a well-pleaded complaint on the breach of contract claim

23 for the Boat Delivery Agreement and a quasi-contract claim for the $25,415.00 loan. The Clerk

24 of the Court has entered default; and therefore, the factual allegations in the complaint are taken

25 as true, as discussed above. Therefore, there is little possibility of a dispute concerning material

26 facts.

27

28   [4] As the other claims in the complaint do not provide for any additional relief, the Court declines to specifically address the other claims.

1         5.     <u>Whether the Default Was Due to Excusable Neglect</u>

2      Defendants have failed to file an answer in this matter and have never appeared in this

3 matter despite being aware of this matter. Defendants' counsel even requested and Plaintiff

4 granted Defendants an extension of the time to file an answer. However, Defendants never filed

5 an answer. Defendants have also failed to oppose the motion for default judgment.

6 Additionally, it has been approximately five months since the Clerk entered default against

7 Defendants.

8      The Court concludes that the failure to respond was due to the affirmative decision not to

9 oppose this action rather than excusable neglect. This factor weighs in favor of granting default

10 judgment.

11         6.     <u>The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring</u>
<u>Decisions on the Merits</u>
12

13      In <u>Eitel</u>, the Ninth Circuit admonished that, "[c]ases should be decided on the merits

14 whenever reasonably possible." <u>Eitel</u>, 782 F.2d at 1482. While cases should be decided on the

15 merits whenever possible, a defendant's failure to answer the complaint "makes a decision on the

16 merits impractical if not impossible." <u>PepsiCo, Inc. v. California Security Cans</u>, 238 F.Supp.2d

17 1172, 1177 (C.D. Cal. Dec. 27, 2002). Here, Defendants have not defended this action despite

18 having the opportunity to do so. Therefore, this factor weights slightly against granting default

19 judgment.

20         7.     <u>The Eitel factors Weigh In Favor of Granting Default Judgment</u>

21      When the Court weighs all of the <u>Eitel</u> factors, the Court finds that the factors weigh in

22 favor of granting default judgment in this instance. Accordingly, the Court finds that Plaintiff is

23 entitled to default judgment. The Court next discusses the relief that Plaintiff seeks.

24     **C.**    **Relief Sought**

25      Plaintiff seeks to recover the $85,000.00 that he paid to Defendants for the boat and the

26 $25,415.00 that he loaned Defendants. Plaintiff also seeks to recover liquidated damages,

27 prejudgment interest, post judgment interest, attorneys' fees, and costs.

28 ///

1.    <u>Damages for Breach of Contract</u>

While Plaintiff asserts that he is owed $110,415.00 as a principal amount and $26,501.37 in liquidated damages as of April 26, 2018, the Court calculates the damages pursuant to the Boat Delivery Agreement first. The recovery of the $25,415.00 loan is restitution and will be discussed in the next section.

The October 15, 2015 Boat Delivery Agreement states that in lieu of actual damages for Defendants' nonperformance, Plaintiff is entitled to liquidated damages in the amount of "$85,000 plus 10% from 3/5/15 for nonperformance after the deadline." (ECF No. 19-2 at 2.) The $85,000.00 that Plaintiff paid Defendants for the boat is part of the liquidated damages amount. Plaintiff has not received the $85,000.00 back from Defendants. (April 25, 2018 Declaration of Kyle Kolb ("Kolb Decl.") at ¶7.)

As Plaintiff points out, liquidated damages are governed by Section 1671 of the California Civil Code. However, Section 1671 has two standards for determining the validity of a liquid damages provision. Plaintiff does not specify which subsection or standard he is seeking liquidated damages under.

Civil Code section 1671, subdivision (b), provides in relevant part: "[A] provision in a contract liquidating the damages for the breach of the contract is valid unless the party seeking to invalidate the provision establishes that the provision was unreasonable under the circumstances existing at the time the contract was made." Therefore, a defendant has the burden of proving that the liquidated damages clause was unreasonable at the time of the contract under Section 1671(b).

However, certain types of contracts are governed by another subsection of Section 1671. Under subdivision (d), the liquidated damages provision "is void except that the parties to such a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Subdivision (c) of Section 1671 prescribes when subdivision (d) applies. Subdivision (c) states:

"The validity of a liquidated damages provision shall be determined under

subdivision (d) and not under subdivision (b) where the liquidated damages are sought to be recovered from either:

"(1) A party to a contract for the retail purchase, or rental, by such party of personal property or services, primarily for the party's personal, family, or household purposes; or

"(2) A party to a lease of real property for use as a dwelling by the party or those dependent upon the party for support."

Cal Civ. Code § 1671(c).

Here, the liquidated damages provision does not fall under subdivision (c) of Section 1671 because Plaintiff is seeking to recover liquidated damages from the seller. Therefore, the validity of the liquidated damages provision is determined by Section 1671(b). As Defendants are not contesting the validity of the liquidated damages provision, the Court next determines the amount of liquidated damages that Plaintiff is entitled to.

The liquidated damages amount in the contract includes 10% of $85,000.00 from March 5, 2015. This 10% amount would be $23.29 a day.[5] The Court calculates the number of days in the period by figuring out the number of days from March 15, 2015,[6] the date that Plaintiff starts the calculation from, until the current date. There are 1167 days in the period from March 15, 2015, through May 25, 2018. Multiplying the daily liquidated damages rate by the number of days in the period, Plaintiff would be entitled to $27,179.43 as part of this 10% clause. The total liquidated damages that Plaintiff is entitled to is $112,179.43 ($27,179.43 + 85,000.00).

Therefore, Plaintiff is entitled to a total of $112,179.43 in liquidated damages based on the breach of the Boat Delivery Agreement as of May 25, 2018, and this amount will increase each day by $23.29 until judgment is entered.

2.   Restitution

Plaintiff is entitled to restitution on the quasi-contract claim based on the $25,415.00

---

[5] The daily amount for this 10% provision is calculated by multiplying the 10% by $85,000.00 and dividing by 365 days. This results in a daily rate of $23.29.

[6] The Court notes that Plaintiff states in the liquidated damages argument section of his supplement that he is seeking liquidated damages at the rate of $8,500 per year from March 15, 2016. It appears that Plaintiff misstated the date in this section, because in the section regarding prejudgment interest, he states that the $8,500.00 per year part of the liquidated damages began to accrue as of March 15, 2015. In addition, the exhibit for the liquidated damages states that the $8,500 per year part of the liquidated damages runs from March 15, 2015. (ECF No. 19-6.)

loan. Plaintiff declares that he wired Defendants the $25,415.00 for the loan, but he never received any loan repayments. (Kolb Decl. at ¶7.) Therefore, Plaintiff is entitled to $25,415.00 in restitution.

### 3. Prejudgment Interest

Plaintiff seeks prejudgment interest on the $85,000.00 that he paid for the boat, the $8,500.00 per year that is part of the liquidated damages assessment, and the $25,415.00 loan.

"It is well settled that prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism." In re Exxon Valdez, 484 F.3d 1098, 1101 (9th Cir. 2007). Thus, federal courts apply state law to a claim for prejudgment interest unless a federal law preempts it. Id. at 1101.

Plaintiff seeks prejudgment interest under California Civil Code section 3287(a) and section 3289. Section 3289 provides for interest at ten percent per annum after a breach of contract unless the contract specifies otherwise. Cal. Civ. Code § 3289(a). Section 3287 of the California Civil Code provides for prejudgment interest where the amount of damages were "certain or capable of being made certain by calculation" or in the discretion of the court where the claim was unliquidated.

Under section 3287(a) "[a] person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest thereon from that day, except when the debtor is prevented by law, or by the act of the creditor from paying the debt." The key factor in determining if prejudgment interest can be awarded under section 3287(a) is whether the damages are readily ascertainable. Wisper Corp. v. California Commerce Bank, 49 Cal.App.4th 948, 958 (1996).

"Damages are deemed certain or capable of being made certain within the provisions of [section 3287(a)] where there is essentially no dispute between the parties concerning the basis of computation of damages if any are recoverable but where their dispute centers on the issue of liability giving rise to damage." Esgro Cent., Inc. v. Gen. Ins. Co., 20 Cal.App.3d 1054, 1060 (1971). "An award of prejudgment interest is intended to make the plaintiff whole 'for the

1  accrual of wealth which could have been produced during the period of loss.' " Wisper Corp., 49

2  Cal.App.4th at 958 (quoting Cassinos v. Union Oil Co., 14 Cal.App.4th 1770, 1790 (1993)).

3      Here, the Court determines that Section 3287(a) is applicable because the damages as a

4  result of the breach of the Boat Delivery Agreement can be calculated without any dispute.

5  Plaintiff calculates damages using simple interest. The Court finds that the prejudgment interest

6  in this action shall be simple interest, which is how Plaintiff calculated the prejudgment interest.

7  See Westbrook v. Fairchild, 7 Cal.App.4th 889, 894 (1992) ("general rule is that interest may not

8  be computed on accrued interest unless by special statutory provision or by stipulation of the

9  parties. . . ."). Therefore, Plaintiff is entitled to 10% prejudgment interest, which is simple

10 interest, on the entire liquidated damages award for the breach of the Boat Delivery Agreement.

11     Plaintiff seeks prejudgment interest on the $8,500.00 per year part of the liquidated

12 damages amount from March 15, 2015. Plaintiff calculates the daily rate of prejudgment interest

13 of the $8,500.00 by multiplying the total $8,500.00 by 10% and then dividing by 365. Plaintiff

14 then multiplies the daily rate by the total number of days in the period. Plaintiff seeks to run the

15 prejudgment interest on the provision of the liquidated damages that provides for $8,500

16 annually from March 15, 2015. However, that was not the date of the breach. The liquidated

17 damages provision includes a provision for a 10% calculation starting on March 5, 2015. The

18 March 5, 2015 date that is attached to the 10% part of the liquidated damages is not the date of

19 breach, but just a date that was used for calculating liquidated damages. The liquidated damages

20 did not begin to run in 2015. The liquidated damages began to run on the date of the breach,

21 March 15, 2016. Therefore, prejudgment interest on the liquidated damages runs from March

22 15, 2016.

23     On the date of breach of the Boat Delivery Agreement, the total liquidated damages due

24 was $93,500.00 ($85,000.00 + $8,500.00). The daily rate for prejudgment interest on this

25 $93,500.00 amount of liquidated damages is $25.62.[7] As of May 25, 2018, there are 801 days in

26 the period from the date of breach. Multiplying the daily rate of prejudgment interest by the

27

28 [7] The daily amount for interest is calculated by multiplying the 10% by $93,500.00 and dividing by 365 days. This results in a daily rate of $25.62

number of days in the period, Plaintiff is entitled to $20,521.62 in prejudgment interest on the liquidated damages as of May 25, 2018, and this amount will increase each day by $25.62 until judgment is entered.

Plaintiff also seeks prejudgment interest on the $25,415.00 loan that was not paid back by Defendants. However, this amount is properly restitution and not damages, as discussed above. The California Court of Appeal has reasoned that Section 3287(a) authorizes prejudgment interest only for the recovery of damages. Rodriguez v. RWA Trucking, 238 Cal.App.4th 1375, 1409-1410 (2013). Therefore, Plaintiff is not entitled to prejudgment interest on the $25,415.00 in restitution.

4.    Attorneys' Fees

Plaintiff seeks attorneys' fees of $5,687.50 for the work of his counsel in this matter incurred up to April 5, 2018. The Court notes that Plaintiff did not originally seek attorneys' fees in his motion for default judgment, but he includes a request for attorneys' fees in his supplement.

Under the "American Rule", each party to a lawsuit ordinarily bears its own attorney fees unless there is express statutory authorization to award attorney fees. Hensley v. Eckerhart, 461 U.S. 424, 429 (1983). In a diversity action, the federal district court applies the substantive law of the forum state, which in this instance is California. Kabatoff v. Safeco Ins. Co. of Am., 627 F.2d 207, 209 (9th Cir. 1980). In general, California law only allows a prevailing party to recover attorney's fees when a statute or an agreement of the parties provides for fee shifting. Kirby v. Immoos Fire Prot., Inc., 53 Cal.4th 1244, 1248 (2012).

Plaintiff points to the clause in the Boat Delivery Agreement that allows the prevailing party to recover attorneys' fees. The contract provides that if mediation is unsuccessful, the parties may, but are not required to, file a claim for arbitration with JAMS ("Judicial Arbitration Mediation Services"). (ECF No. 19-3 at 5.) The contract then sets forth several aspects of the optional arbitration. (Id.) Then, there is a clause providing the prevailing party with attorneys' fees. (Id.)

While this clause providing for attorneys' fees is contained in a discussion of optional

arbitration, there is nothing that limits the award of attorneys' fees to only arbitration. The intent of the parties was to provide the prevailing party with attorneys' fees after engaging in dispute resolution. Plaintiff decided to file this action after Defendants would not participate in mediation. Plaintiff could have pursued optional arbitration as provided in the contract, but Plaintiff chose to file this action in district court. As the agreement between the parties contemplated and provides for attorneys' fees, Plaintiff should be awarded attorneys' fees.

California and the Ninth Circuit utilize the "lodestar" approach for assessing reasonable attorney fees, where the number of hours reasonably expended is multiplied by a reasonable hourly rate. Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013); Ketchum v. Moses, 24 Cal. 4th 1122, 1131, 17 P.3d 735, 741 (2001). "[T]he lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." Ketchum, 24 Cal.4th at 1132.

California courts consider the reasonableness of an attorney fee by considering a variety of factors: " the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. Martino v. Denevi, 182 Cal.App.3d 553, 558 (1986).[8] "To enable the trial court to determine whether attorney fees should be awarded and in what amount, an attorney should present '(1) evidence, documentary and oral, of the

---

[8] In determining a reasonable fee, federal law takes into account the factors set forth in Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975): (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases [.]"). McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).

services actually performed; and (2) expert opinion, by [the applicant] and other lawyers, as to what would be a reasonable fee for such services.' " Martino, 182 Cal.App.3d at 558 (citations omitted).

### a. Hourly Rates

The Supreme Court has explained that the loadstar amount is to be determined based upon the prevailing market rate in the relevant community. Blum v. Stenson, 465 U.S. 886, 896 (1984). The "relevant legal community" for the purposes of the lodestar calculation is generally the forum in which the district court sits. Gonzalez, 729 F.3d at 1205. The relevant community here is the Fresno Division of the Eastern District of California. The standard is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997) (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210–11 (9th Cir. 1986)).

Plaintiff seeks $325.00 per hour for Mr. Berens, $300.00 per hour for Mr. Stepans, and $300.00 per hour for Joseph D. Estes. Mr. Stepans states in his declaration attached to the supplement that the hourly rates are within the range of those charged by attorneys in the Eastern District of California for similar work. However, there is no further explanation or authority presented. While Plaintiff should have provided evidence justifying the hourly rates sought, in this instance, the Court relies on its own knowledge of customary legal local rates and experience with the legal market in setting a reasonable hourly rate. Ingram v. Oroudjian, 647 F.3d 925, 926 (9th Cir. 2011).

The Court addressed prevailing rates in the local economy and found that in the Fresno Division of the Eastern District of California, attorneys with twenty or more years of experience are awarded $350.00 to $400.00 per hour, less than fifteen years of experience are awarded $250.00 to $350.00 per hour, and less than two years of experience are awarded $125.00 to $200.00 per hour. See In re Taco Bell Wage & Hour Actions, 222 F.Supp.3d 813, 839-840 (E.D. Cal. 2016).

Here, Plaintiff did not provide any information about the qualifications or experience of the three attorneys whose work Plaintiff is seeking fees for. Generally, the Court requires the

party seeking attorneys' fees to provide information justifying the hourly rates. However, to avoid Plaintiff incurring any additional expenses from having to file another supplement, the Court searched the relevant state bar websites for information about the attorneys. Mr. Stepans and Mr. Berens are barred in California. Mr. Estes is barred in Arizona and Nevada.

Mr. Stepans was admitted to practice in California on December 16, 1991. Based on Mr. Stepans's twenty-six years as an attorney, the Court determines that $300.00 per hour is a reasonable hourly rate for his services in this action. Mr. Berens was admitted to practice in California on August 7, 1989. Based on Mr. Berens's twenty-eight years of experience as an attorney, the Court determines that $325.00 per hour is a reasonable hourly rate for his services in this action. Mr. Estes was admitted to practice in Arizona on May 16, 2005, and admitted to practice in Nevada on September 25, 2003. Based on Mr. Estes's fourteen years an attorney, the Court determines that $300.00 per hour is a reasonable hourly rate for his services in this action.

**b.      Reasonable Hours Billed**

Plaintiff seeks attorney fees for 18.30 hours of work and has provided a detailed accounting of the time spent in this matter. (ECF No. 19-9 at 1-3.) The Court has reviewed the time accounting and determines that the amount of time appears to be reasonable, except as noted.

Mr. Stepans indicates in his April 25, 2018 declaration that "[a]ny additional fees incurred after April 5, 2018 will be presented before the hearing of this matter." (Stepans Decl. at ¶ 9.) Although Plaintiff has not formally requested any fees for counsel's work after April 5, 2018, the Court notes that it would recommend that any fees incurred after that date not be awarded. Any work after that date is related to the supplement that Plaintiff was ordered to file because the original motion for default judgment was inadequate. The original motion for default judgment was only 4 pages, and in fact, was only 2 pages of argument. The only attachment was a three-page declaration by one of Plaintiff's counsel. It did not address any of the Eitel factors and did not include an analysis of the claims that Plaintiff is seeking default judgment on. In addition, there is quite a difference in the explanation and calculation for the liquidated damages and prejudgment interest in the supplement compared to the original motion

for default judgment. Plaintiff is seeking 3.1 hours for preparing the original motion for default judgment and 6.7 hours for analyzing the Court's April 4, 2018 orders, preparing Plaintiff's request for continuance of hearing, preparing for the April 5, 2018 hearing, and conducting an analysis needed for a follow-up hearing. Therefore, the Court finds that 2 hours is reasonable for preparing the original motion for default judgment and 4 hours for analyzing the Court's April 4, 2018 orders for a total of 6 hours spent on the motion for default judgment as a whole (in addition to the .4 hours sought for attending the hearing).

After the reduction of Mr. Stepans's hours by 2.7 hours, Mr. Stepans is entitled to 4.5 hours (7.2 -2.7); Mr. Berens is entitled to 6.8 hours; and Mr. Estes is entitled to 3.2 hours.

### c. Reasonable Attorneys' Fees

In order to determine the attorneys' fees dues, the Court multiplies the reasonable hourly rates for each attorney by the reasonable number of hours that each attorney spent on this matter.

| Attorney | Hourly Rate | # of Hours | Amount Due |
|---|---|---|---|
| Mr. Berens | $325.00 | 6.8 | $2,210.00 |
| Mr. Stepans | $300.00 | 4.5 | $1,350.00 |
| Mr. Estes | $300.00 | 3.2 | $960.00 |

Therefore, the Court finds that Plaintiff should be awarded attorneys' fees of $4,520.00.

### 5. Costs

Plaintiff also seeks $454.00 for costs expended on this matter. In a diversity action, federal not state law controls the issue of costs. Aceves v. Allstate Ins. Co., 68 F.3d 1160, 1167 (9th Cir. 1995); see also 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure ("Wright and Miller") § 2669 (3d ed. 1998). Under federal law, 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." Grove v. Wells Fargo Fin. California, Inc., 606 F.3d 577, 579 (9th Cir. 2010). Those costs taxable under section 1920 are limited to relatively minor, incidental expenses. Taniguchi v. Kan Pac. Saipan, Ltd., 132 S. Ct. 1997, 2006, (2012). "Taxable costs are a fraction of the

nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.' " <u>Taniguchi</u>, 132 S. Ct. at 2006 (quoting Wright and Miller § 2666, p. 203).

Plaintiff attaches a log itemizing expenses. (ECF No. 19-9 at 4.) Based upon review of the docket, Plaintiff paid a filing fee of $400.00 in this action. (ECF No. 1.) The Court finds that the charge for service of process on the two defendants of $54.00 is reasonable. (ECF No. 19-9 at 4.) Based on the foregoing, the Court recommends that Plaintiff be awarded costs in the amount of $454.00 in this action.

6. <u>Post-Judgment Interest</u>

Under the provisions of 28 U.S.C. § 1961, post-judgment interest on a district court judgment is mandatory. <u>Air Separation, Inc. v. Underwriters at Lloyd's of London</u>, 45 F.3d 288, 290 (9th Cir. 1995) (citing <u>Perkins v. Standard Oil Co.</u>, 487 F.2d 672, 674 (9th Cir. 1973)). Post-judgment interest applies to the entire judgment, including principal, pre-judgment interest, attorneys' fees, and costs. <u>Id.</u> at 291. The post-judgment interest rate is set "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding. the date of the judgment." [sic] 28 U.S.C. § 1961(a). Accordingly, Plaintiff shall be awarded post-judgment interest as set forth in 28 U.S.C. § 1961(c).

**IV.**

**RECOMMENDATIONS**

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for entry of default judgment be GRANTED IN PART;

2.      Judgment be entered in Plaintiff's favor and against Defendants;

3.      Plaintiff be awarded liquidated damages totaling $112,179.43 as of May 25, 2018, and this amount increase each day by $23.29 until judgment is entered;

4.      Plaintiff be awarded $25,415.00 in restitution;

5.      Plaintiff be awarded attorneys' fees in the amount of $4,520.00;

6.      Plaintiff be awarded costs in the amount of $454.00;

7.      Plaintiff be awarded pre-judgment interest totaling $20,521.62 as of May 25, 2018, and this amount increase each day by $25.62 until judgment is entered; and

8.      Plaintiff be awarded post judgment interest as set forth in 28 U.S.C. § 1961(a), which shall accrue from the time of entry of judgment until the judgment is satisfied in full.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **May 25, 2018**

_____
UNITED STATES MAGISTRATE JUDGE